KEMPER MILL COMPANY, Respondent, v. MIS-
SOURI PACIFIC RAILWAY COMPANY, Ap-
pellant.

Kansas City Court of Appeals, May 1, 1916.

1. CARRIERS OF GOODS: Damages: Interstate Shipment:
Misdelivery: In Transit: Destination. The Carmack amend-
ment to the Hepburn Act of Congress, 34 U. S. Stat. L. 594,
whereby the initial carrier is made liable to the legal holder
of the bill of lading for loss of property, covers a loss from
misdelivery at destination as well as a loss while in transit.

2. ———: ———: Notice of Loss. A provision in a bill of
lading for notice of loss of property within a specified time, is
valid.

3. ———: ———: ———: Waiver. A provision in a con-
tract of shipment requiring an interstate carrier to be notified
within a specified time of the loss of property in an interstate
shipment, cannot be waived by the carrier.

4. ———: ———: Misdelivery: Initial Carrier: Final Car-
rier: Notice. Where a railway carrier purposely delivered
the property to a party not entitled to receive it and took a
bond to indemnify it for all damage it might be compelled to
pay by reason of such misdelivery, such carrier is entitled to
notice of loss. Held further, that where plaintiff seeks to hold
the initial carrier liable for the misdelivery of the final car-
rier, notice must be given to such initial carrier.

Appeal from Jackson Circuit Court.—Hon. E. E. Por-
terfield, Judge.

REVERSED.

White, Hackney & Lyons for appellant.

Cowherd, Ingraham, Durham & Morse for res-
pondent.

ELLISON, P. J.—Plaintiff's action is to recover
damages for failure to deliver bran shipped over de-

fendant's road from Wichita, Kansas, to Atmar, Texas.  Judgment was rendered against defendant.

It appears that an institution known as the Kansas Milling Company shipped in two shipments over defendant's road, and its connecting carriers, two carloads of bran from Wichita, Kansas, to Atmar, Texas, consigned to itself.  The Kansas Milling Company sold and endorsed the bills of lading for these shipments to plaintiff.  They provided that plaintiff was to be notified of arrival at destination.  The bran arrived at Atmar, but instead of being delivered to plaintiff, the last carrier delivered  to the  Trinity County Lumber Company without surrender of the bills of lading held by plaintiff.  In making this delivery that carrier, for its protection, took an indemnifying bond from the Lumber Company.

The shipment falls under the interstate commerce law of Congress, known as the Carmack amendment to the Hepburn Act, whereby the initial carrier is made liable to the legal holder of the bill of lading for loss of property. [Adams Express Co. v. Croninger, 226 U. S. 491, 504; Kansas Southern v. Carl, 227 U. S. 639. Atl. Coast Line R. R. Co. v. Riverside Mills, 219 U. S. 186]  The particular statute is as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." [34 Stat. L. 594.]

There is no good reason for the assertion that such statute only covers a loss or injury in transit, as distinguished from a misdelivery. The terms of the statute are not thus limited.

The last carrier delivered to the Lumber Company at the request of a company known as the Reader Grain Company. But it was not shown that such company had authority from plaintiff to make such request. Nor was the attempt successful which defendant made to show that the Reader Grain Company had been held out by plaintiff as its agent. It seems that this grain company had bought grain from plaintiffs and deliveries had been allowed without payment. But those shipments were not accompanied by bills of lading. They did not, as did these, require delivery on the shipper's order and delivery of the bill of lading.

There was some evidence of the Reader Company occupying, in certain instances, a limited agency for plaintiffs. But it clearly appeared to be wholly disconnected from the transaction in controversy.

But it is said that plaintiff ratified Reader's agency after knowledge of the wrongful delivery. We think the court properly found against that part of the defense. The fact that plaintiff made effort to collect from the Reader Company for its wrongful act in ordering a misdelivery, does not absolve defendant from its obligation. If one orders another to commit a wrong against a third party, each is liable and an unsuccessful effort to hold one will not relieve the other.

Defendant claims exemption from liability by reason of a failure on plaintiff's part to notify it within four months as required by the following provisions of the bill of lading:

"Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at

the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable.''

Such provision is valid. [Express Co. v. Caldwell, 21 Wall. 264; Mo. Kan. & Tex. Ry. Co. v. Harriman, 227 U. S. 657, 673; Queen of the Pacific, 180 U. S. 49; Clegg v. Railroad, 203 Fed. 971.]

But plaintiffs seek to avoid that part of the contract on the ground of its being inapplicable to the character of loss suffered in this case. We held in Banaka v. Missouri Pacific Ry. Co., at our last sitting and not yet reported, not only that such contracts were valid, but in interstate shipments, they could not be waived. Plaintiff insists that the railway company purposely delivered the property to a party not entitled to receive it and took a bond to idemnify it for all damage it might be compelled to pay by reason of such irregular delivery; and that notice to a person that he has committed an act he himself avows and for which he has taken indemnity, cannot, reasonably, be within the intendment of the contract. Plaintiff asks that if a carrier should wilfully and wrongfully refuse to deliver to the consignee a shipment which had duly arrived, could there be any reason in giving him notice of such refusal? These objections, substantially, were disallowed in a late case in the Supreme Court of the United States: Ga. Florida & Ala. Ry. Co. v. Blish Milling Co., May, 8, 1916.

Besides, plaintiff is seeking to hold the initial carrier liable for the loss of the property by reason of the conversion of such property by the final connecting carrier. The initial carrier is made liable by the Carmack amendment to Hepburn Act. This statutory right given to the shipper, should not deprive the initial carrier of any provision of the shipping

contract which the reason and justice of the situation would suggest it is entitled to. In this instance, the shipment originated with defendant, as initial carrier, in another State and at a great distance from the point of destination on the line of the connecting carrier. It is not going too far to say, that in all reasonable probability defendant, in such circumstances, would only know of plaintiff's loss through the notice called for in the contract, and we think the contract should be so construed as to require such notice even in cases of wilful misdelivery by the final connecting carrier. [Georgia, Flor. & Ala. Ry. Co. v. Blish Milling Co., supra.] It was also held in that case that notice could not be waived.

In Banaka v. Missouri Pacific Ry., supra, we disposed of any suggestion that the Interstate Commerce Commission had made an order permitting carriers to waive, or not enforce, the provision of the contract as to notice. This case, like that, was begun and tried before that order was made.

The foregoing results in reversing the judgment. All concur.