ST. LOUIS, I. M. & S. RY. CO. v. LANDA & STOREY et al. (No. 5684.)*

(Court of Civil Appeals of Texas. San Antonio. June 14, 1916. Rehearing Denied June 30, 1916.)

1. APPEAL AND ERROR ⚏758(3)—ASSIGNMENTS—NUMBERS—COURT RULES.

Giving numbers to assignments of error in the brief not corresponding to the numbers of the same assignments in the motion for new trial is expressly permitted by Court of Civil Appeals rule 29 (142 S. W. xiii).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 758; Dec. Dig. ⚏758(3).]

2. PLEADING ⚏228—EXCEPTIONS—CONTRACT VIOLATING LAWS.

An exception to the petition as seeking to enforce a contract illegal as violative of the United States laws relating to rates on interstate commerce need not name the particular laws.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ⚏228.]

3. PLEADING ⚏85(1)—OBJECTIONS—TIME TO MAKE.

Objection that the suit is based on an illegal contract when the petition discloses it, may be made at any stage, as it goes to the substance of the petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 172, 173; Dec. Dig. ⚏85(1).]

4. CARRIERS ⚏13(2)—REBATES—COMPROMISE OF CLAIM.

An agreement of a carrier to pay a certain amount in compromise of an unliquidated claim for damages for alleged negligence, in consideration of the claimant making all his subsequent interstate shipments over the carrier's line, violates the law against rebating.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 22, 24; Dec. Dig. ⚏13(2).]

5. CARRIERS ⚏13(1)—AGREEMENT FOR REBATE—ESTOPPEL—ILLEGAL CONTRACTS.

A carrier will not be required on the ground of estoppel to perform its part of a contract, illegal as giving a rebate, because of the shipper having performed his part.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 21, 24; Dec. Dig. ⚏13(1).]

Error from District Court, Hays County; Frank S. Roberts, Judge.

Action by Landa & Storey against the St. Louis, Iron Mountain & Southern Railway Company and others. There was judgment against the named defendant, and it brings error. Reversed and dismissed.

See, also, 149 S. W. 292.

Guinn & McNeill, of San Antonio, for plaintiff in error. O. T. Brown and E. M. Cape, both of San Marcos, for defendants in error.

MOURSUND, J. Landa & Storey sued the St. Louis, Iron Mountain & Southern

Railway Company, a foreign corporation, the Texas & Pacific Railway Company, the International & Great Northern Railway Company, and James A. Baker and Cecil A. Lyons, receivers of said last-named company, alleging that on or about August 14, 1909, plaintiffs instituted a suit in the district court of Hays county against the said St. Louis, Iron Mountain & Southern Railway Company, the Texas & Pacific Railway Company, the International & Great Northern Railroad Company, and T. J. Freeman, receiver of said last-named company, wherein plaintiffs sought to recover a sum as damages alleged to have been occasioned by the negligence of the defendants therein "in the course of the shipment of a lot of beef cattle shipped by the plaintiffs from New Braunfels Tex., to the National Stockyards at East St. Louis, Ill.," said cause being numbered No. 2147 on the docket of said court; that plaintiffs were exclusively engaged in shipping beef cattle from points in Western Texas to the National Stockyards at East St. Louis, Ill., and at the time had the privilege of shipping the same over various routes to the entire exclusion of the route afforded by the defendants in said suit, which route is for convenience styled the Iron Mountain route, and plaintiffs were shipping the same over such other routes, all of which was well known to said defendants, and said defendants, desiring to share in the traffic thus promoted by plaintiffs, were willing to come to a "settlement of said suit by a compromise agreement to that end, and with a view to that purpose" said Receiver Freeman, said Texas & Pacific Railway Company, and said St. Louis, Iron Mountain & Southern Railway Company on the one hand, acting through their authorized agents, and plaintiffs, on the other hand, on or about May 7, 1911, for a valuable consideration, agreed upon a compromise of said suit; that said agreement, in substance, was (1) that the defendants should and would pay plaintiffs in cash $700 of the $720 damages claimed in that suit and the accrued costs of suit; (2) that plaintiffs should and would accept the payment of same as full settlement and discharge of the damages claimed in said suit; and (3) that from said date forward plaintiffs should and would route all the cattle shipped by them during the remainder of the cattle shipping season of that year so that the same would be carried over said Iron Mountain route; that said agreement was directly afterwards made known to said defendants in that suit and ratified by them before plaintiffs routed their subsequent shipments in conformity with that agreement; that the time within which plaintiffs were to be paid was not specified, but it was understood and agreed that payment was to be made within a reasonable time, and that 60 days was a reasonable time; that plaintiffs relied upon said agreement and complied therewith by routing all of their shipments of cattle dur-

ing said shipping season so that they were received and carried by defendants from various points in West Texas to the National Stockyards at East St. Louis, Ill., there being about 60 cars, on all of which plaintiffs paid the entire freight, amounting in the aggregate to about $7,000 or $8,000, which was received by said defendants; that said defendants received said freight, although they intended all the while to refuse payment of the sums agreed to be paid by them to plaintiffs according to the terms of said agreement, which sums were alleged to be $700 and $42; that defendants have failed and refused to pay the sums due plaintiffs under said agreement, and are justly indebted to plaintiffs in said sums, with interest from July 7, 1911.

Plaintiffs alleged that the International & Great Northern Railway Company purchased the assets of and became liable for the debts of the International & Great Northern Railroad Company.

The St. Louis, Iron Mountain & Southern Railway Company filed a plea in abatement; a general demurrer; special exceptions; denials of the material allegations of the petition; a plea to the effect that, if any compromise agreement was made, it was abrogated by plaintiffs by their election to proceed with said cause No. 2147 and the prosecution thereof to final judgment; a plea to the effect that, if such a compromise agreement was made, and the consideration was as alleged by plaintiffs, then that such agreement was illegal and void, in that it is contrary to and forbidden by the laws of Texas, and of the United States, in that it granted a privilege and advantage to plaintiffs not open to other shippers of the same character of freight transported in the same manner and over the same lines, and was equivalent to a reduction in plaintiffs' favor of the freight rates authorized and published by the Interstate Commerce Commission for that kind and character of freight over the lines of defendants, and was an undue and unlawful discrimination in plaintiffs' favor. Said defendant also denied that it was indebted to plaintiffs as alleged in said cause No. 2147, and denied that it was negligent with reference to the shipment described in said suit.

Plaintiffs, by supplemental petition, denied the allegations above stated. Plaintiffs dismissed as to all defendants except the St. Louis, Iron Mountain & Southern Railway Company, and upon a trial before the court judgment was rendered against said company for $720, with interest thereon from July 7, 1911. Said railway company, by writ of error, seeks revision of the judgment against it.

The evidence shows that an agreement was made by D. C. Smith, live stock agent of plaintiff in error, with defendants in error, substantially as alleged in the petition. The amount to be paid was $720.70, the full

amount claimed in cause No. 2147, exclusive of interest. The evidence was conflicting as to whether the agreement provided for the payment of costs incurred in cause No. 2147 and the payment of interest on the sum of $720.70 from May 15, 1908. The court found against plaintiffs on these items, and allowed $720, with interest thereon beginning 60 days after May 7, 1911, the date of the compromise agreement.

Landa & Storey had ceased shipping over the Iron Mountain route during the pendency of· cause No. 2147, and the compromise agreement was made for the purpose of getting them to ship all of their cattle over said route during the remainder of the cattle shipping season of 1911 at the usual and regular freight rates, and it was contemplated by both parties that the regular freight would be collected on each shipment when it should be made. Plaintiffs complied with the agreement to ship exclusively over the Iron Mountain route, shipping 74 cars in all during the remainder of the year 1911, on which they paid the usual freight, amounting in the aggregate to $7,978.71. Defendants failed to pay the sums agreed to be paid by them, whereupon plaintiffs proceeded with the trial of cause No. 2147, obtained a judgment against the St. Louis, Iron Mountain & Southern Railway Company for the full amount of the claim, with interest thereon, but not against the other defendants, and said judgment, in so far as it affected said St. Louis, Iron Mountain & Southern Railway Company, was reversed by the Court of Civil Appeals of the Third District, and the cause remanded, whereupon, prior to the trial of this case, said cause No. 2147 was dismissed.

Plaintiff in error, by its third assignment of error, complains of the overruling of an exception to the petition, wherein it was contended that the petition stated no cause of action, for the reason that the contract sought to be enforced therein was illegal, in that it violated the laws of the United States relating to rates upon interstate commerce. While this exception was styled a special exception, it goes to the foundation of the cause of action asserted.

By the fourth assignment plaintiff in error contends that the evidence shows the compromise agreement to have been an illegal one, because in violation of the laws of the United States relating to interstate commerce.

[1-3] These assignments will be considered together. Defendants in error object to the consideration thereof on the ground that the numbers given said assignments in the brief do not correspond with the numbers of the same assignments in the motion for new trial, but such change of numbers is expressly permitted by rule 29 for the Courts of Civil Appeals (142 S. W. xiii). They also object on the ground that the so-called "special exception" failed to name the particular laws which were relied· upon. This was unnecessary. In fact, when the petition discloses that the suit is based upon an illegal contract, the objection may be made at any stage of the proceedings, for it goes to the substance of the petition, and the error, if any exists, is fundamental. T. P. Coal Company v. Lawson, 89 Tex. 403, 32 S. W. 871, 34 S. W. 919; Fuqua v. Brewing Company, 90 Tex. 301, 38 S. W. 29, 35 L. R. A. 241; Redland Fruit Company v. Sargent, 51 Tex. Civ. App. 622, 113 S. W. 330; Norris v. Logan, 100 Tex. 228, 97 S. W. 820.

[4] The contract as alleged and proved is one by which plaintiff in error, for the purpose of obtaining the shipment over its road, and the roads of the other companies, of all cattle to be shipped by Landa & Storey during the cattle shipping season of 1911, at the usual and regular freight rates, bound itself to pay to Landa & Storey a certain sum of money in settlement of an unliquidated claim for damages alleged to have been sustained by Landa & Storey by reason of negligence on the part of plaintiff in error and the other railroad companies in the transportation of cattle. This claim had been sued upon and the suit contested by the defendants therein. The compromise agreement was one involving shipments of cattle to National Stockyards, and therefore related to interstate commerce, and such interstate shipments were in fact made, and are relied upon to show compliance by Landa & Storey with the terms of the compromise agreement. It follows that, if the agreement provides for a rebate or for discrimination, such rebate or discrimination will be with regard to interstate commerce. We will therefore consider this case in the light of the federal statutes and decisions, and not our statute and decisions.

An agreement to pay money or deliver property in consideration of receiving all the tonnage of a certain shipper at the regular rate is illegal; for its effect is to give a rebate and to discriminate against the shipper who will not bind himself to ship exclusively over such road. In the case of Vandalia R. v. United States, 226 Fed. 713, 141 C. C. A. 469, the court, in speaking of the Elkins Law, said:

"Every device that seeks to cover up either a rebate or a discrimination in interstate transportation is denounced by the statute, provided only, as to a rebate, that thereby the property is actually transported at less than the tariff rate. That the full tariff rate is collected at the time of transportation does not negative the possibility of a rebate in respect thereto. The rebate may be in a lump cash sum in advance (United States v. Union Stockyards, 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226), or by later or earlier indirect payments (G. R. & I. Ry. Co. v. United States, 212 Fed. 577, 129 C. C. A. 113). * * * If, then, a direct cash payment for exclusive tonnage is a rebate in respect to property transported under such a contract, any device whereby a similar payment is made comes within the prohibition of the statute. A loan at less than the market rate of interest, like a lease at less than market rental (C., C., C. & St. L. Ry. Co. v. Hirsch, 204 Fed.

849, 853, 123 C. C. A. 145) is, in effect, a gift of the difference between the contract and the market rate, and is in every respect equivalent to a direct payment of that amount of money."

In the instant case, instead of promising to pay money for exclusive shipments, appellant promised to pay an unliquidated claim for damages, which claim it was at that time contesting in the courts. It is obvious from the pleadings and the evidence that the agreement to pay such claim was not made on account of any recognition of the justice of the claim, but solely as a means to procure the large number of shipments to be made by Landa & Storey. It does not appear from the pleadings or evidence that plaintiffs were entitled to the amount sued for in cause No. 1247, nor that they were not entitled thereto. In the case of Union Pacific R. Co. v. Goodridge, 149 U. S. 680, 13 Sup. Ct. 970, 37 L. Ed. 896, the court had under consideration a statute of Colorado, described by the court as of the same nature as the Interstate Commerce Act, and, like that, designed to prevent unjust discrimination and rebates. It was claimed that certain rebates were justified because given in consideration of the release of certain unliquidated claims for damages alleged to have been suffered on account of negligent acts of the company's grantors; said claims being asserted to be a lien against the property. The court held that the rebate could not be allowed, and in discussing the matter said:

"To hold a defense thus pleaded to be valid would open the door to the grossest frauds upon the law, and practically enable the railroad company to avail itself of any consideration for a rebate which it considers sufficient, and to agree with the favored customer upon some fabricated claim for damages, which it would be difficult. if not impossible, to disprove. For instance, under the defense made by this company, there is nothing to prevent a customer of the road, who has received a personal injury, from making a claim against the road for any amount he chooses, and in consideration thereof, and of shipping all his goods by that road, receiving a rebate for all goods he may ship over the road for an indefinite time in the future. It is almost needless to say that such a contract could not be supported."

This statement was not necessary to the decision of the case, but it is by such eminent authority, and shows so clearly the evils which would follow if contracts such as the one sued on herein be permitted that we think it should be accepted as conclusive in this case. When one shipper is favored by agreeing to pay his unliquidated claim for damages, he is getting something which other shippers do not receive, and which is regarded and treated by both parties as valuable, and whatever the concession is worth amounts to a rebate just as the delivery of money or property would amount to a rebate. Appellees contend that, as the evidence showed that plaintiffs paid all the freight at regular rates, "it will surely be presumed that the regular rates mentioned as paid were the same provided by law." We agree with them, and also construe their pleadings as alleging the agreement on their part to pay the freight provided by law on each shipment, but the fact remains that, in order to secure such agreement, the company promised them a concession deemed valuable by both parties; promised to pay a claim which it had denied and contested, and which was then being litigated in the courts. In support of our conclusion that the contract declared on and proved is illegal we cite also the following cases: Duplan Silk Co. v. American & Foreign Ins. Co., 205 Fed. 724, 124 C. C. A. 18; Cleveland, C., C. & St. L. Ry. Co. v. Hirsch, 204 Fed. 849, 123 C. C. A. 145; United States v. Union Stockyards, 226 U. S. 306, 308, 33 Sup. Ct. 83, 57 L. Ed. 226; Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; New Haven R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515.

[5] Defendants in error contend that, as they performed their part of the contract, plaintiff in error should be required to comply with its agreement and made to pay the sums it agreed to pay. The principle of estoppel is sought to be invoked. There is no merit in this contention. To so hold would be to enforce an illegal contract; to require the discrimination prohibited by law to be actually made; to make a common carrier violate the law by paying a rebate. See Cleveland, C., C. & St. L. Ry. Co. v. Hirsch, supra; Southern Cotton Oil Co. v. Central of Georgia Ry. Co., 228 Fed. 335, 142 C. C. A. 627.

We conclude that plaintiffs' petition discloses that the suit is based upon an illegal contract, and that the evidence even more clearly than the petition shows that the contract was illegal.

The judgment of the trial court must therefore be reversed, and, there being no reason for remanding the cause, the same will be dismissed.