BETKA v. HOUSTON & T. C. R. CO. et al.*
(No. 7241.)

(Court of Civil Appeals of Texas. Galveston. Oct. 19, 1916. Rehearing Denied Nov. 16, 1916.)

1. COMMERCE ⚖➝8—INTERSTATE SHIPMENTS—STATUTES GOVERNING.

Where cattle are injured due to negligence of the carrier in an interstate shipment, the rights of the parties are fixed by federal statute and decisions, and state statutes as to validity of carriage contracts have no application.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⚖➝8.]

2. CARRIERS ⚖➝230(5) — INTERSTATE SHIPMENTS—STATUTES GOVERNING.

Where the shipper had a contract for transportation of cattle at a reduced rate, which required notice and action within 40 days of discovery of damage, and declared the rights of the parties, it was not a question for the jury

whether the contract entered into was reasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962; Dec. Dig. ☞230(5).]

3. CARRIERS ☞230(5) — INTERSTATE SHIPMENTS — NOTICE OF LOSS — QUESTION FOR JURY.

Where the shipper could, immediately on arrival of the cattle, have determined the extent of their injuries due to the carrier's negligence in an interstate shipment, but failed to give notice, there was no question for the jury whether a contract, requiring notice and suit within 40 days of delivery, was valid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962; Dec. Dig. ☞230(5).]

4. CARRIERS ☞228(2)—CONTRACTS—CONSIDERATION.

There is no merit in the contention that the consideration for special conditions of shipping contract was invalid on the ground that the lesser rates therein provided for were contrary to the schedules approved by the Interstate Commerce Commission, in the absence of evidence that the rate provided for was not one of two rates approved by the Commission.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 959; Dec. Dig. ☞228(2).]

5. CARRIERS ☞204—INTERSTATE SHIPMENTS —STATUTES—CONSTRUCTION.

Where a carriage contract was executed prior to Act Cong. March 4, 1915, c. 176, 38 Stat. 1196, amending Hepburn Act June 29, 1906, c. 3591, 34 Stat. 584, providing that no notice of claim or filing thereof shall be required as a condition precedent to recovery for damages to interstate shipments, but suit was brought after such enactment, it did not apply; there being nothing to indicate that it was intended to have any retroactive effect.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 927; Dec. Dig. ☞204.]

Appeal from District Court, Waller County; J. D. Harvey, Judge.

Action by L. Betka against the Houston & Texas Central Railroad Company and others. From a judgment on directed verdict for defendants, plaintiff appeals. Affirmed.

Meek & Kahn, of Houston, and Hannay & Hannay, of Hempstead, for appellant. Baker, Botts, Parker & Garwood, of Houston, and Garrett & Garrett, of Austin, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellees to recover the sum of $1,826.50 as damages for injury to cattle shipped over appellees' railway lines from Cheneyville, in the state of Louisiana, to Hockley, a station on the line of the Houston & Texas Central Railroad in the state of Texas. The cattle were shipped under a written contract executed by an agent of appellant and an agent of the initial carrier, the Louisiana & Western Railway Company. The La Fayette & Alexandria Railroad Company and the Texas & New Orleans Railroad Company, the intermediate carriers, were sued with the other roads above named. The defendants answered, and each of them, among other defenses, specially pleaded the provisions of the contract of shipment hereinafter set out and the failure of plaintiff to comply with said provisions. After hearing the evidence the trial judge instructed the jury to return a verdict for the defendants, and upon the return of such verdict judgment was rendered in accordance therewith. The contract under which the cattle were transported by defendants' railway lines contains the following provisions:

"Said party of the second part further agrees that as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim thereof, before said stock is removed from the place of delivery of the same hereinbefore mentioned, and before said stock is mingled with other stock, to R. L. Wragg, station agent of said party of the first part at said company's office at Cheneyville station, or in case said agent be not present at said office to receive said notice, then to that employé of said party of the first part at said station who represented said company in the actual delivery of said stock."

"It is further mutually agreed and expressly provided that no suit or action against parties of the first part for the recovery of any claim by virtue of this contract should be sustainable in any court of law or equity unless said suit or action be commenced within forty days next after the damages should have occurred; and should any suit or action be commenced against said party of the first part after the expiration of said forty days, the lapse of time shall be taken as being conclusive evidence against the validity of such claim; any statute of limitation to the contrary notwithstanding."

"It is further mutually agreed that no suit be brought on any claim which may arise under this contract, unless such suit be commenced within forty days next after the damage shall have occurred, and any suit brought thereafter shall be deemed conclusively barred and invalid."

The evidence shows that the cattle were shipped from Cheneyville on the 24th or 25th of April, 1913, and reached Hockley a day or two thereafter. Some of them were dead in the cars when the train reached Hockley, some died in the railroad pens into which they were unloaded at Hockley, some on the way to appellant's pasture, and one or more after being put in the pasture. Many of the remainder of the shipment were badly injured. The evidence shows that the loss of and injury to the cattle was caused by the negligent manner in which the defendants handled the train on which they were shipped, and that the damages sustained by plaintiff amounted to the sum of $1,800. This suit was filed on February 1, 1915. As shown by an order of the court overruling a motion of plaintiff to submit the cause to the jury upon special issues, the trial judge was of opinion that the provisions of the contract that no suit could be maintained on any claim thereunder unless brought within 40 days after the damages claimed occurred, was not unreasonable, and was binding upon the plaintiff as a matter of law, and as the undisputed evidence showed that the suit was not brought within 40 days after the damages occurred, the defendants were entitled to have the jury instructed to return a verdict in their favor.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] We do not think the trial court erred in this view of the law applicable to the case made by the pleadings and evidence. The shipment was interstate, and the rights of the parties under the interstate contract of shipment are fixed by the federal statute and decisions, and our state statute, declaring any contract or agreement unlawful in which the time to sue thereon is limited to a shorter period than two years, has no application. This was the ruling of the Supreme Court of the United States in the case of Railway Co. v. Harriman Bros., ·227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, and that decision has been uniformly followed by both federal and state courts. Railway Co. v. Langbehn, 158 S. W. 244; Railway Co. v. Word, 159 S. W. 379.

Prior to the enactment of the statute above mentioned (article 5713, Revised Statutes 1911) our Supreme Court held that the only limitation on the right of railroads to limit the time in which suit could be brought on a contract of shipment was that the time fixed must not be unreasonable, and that it was not unreasonable to require that suit be brought within 40 days after the damage occurred. Railway Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494; McCarty v. Railway Co., 79 Tex. 33, 15 S. W. 164; Railway Co. v. Gatewood, 79 Tex. 89, 14 S. W. 913, 10 L. R. A. 419.

The Supreme Court of the United States has held in a number of cases that such time limit for bringing suit was reasonable. Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Railway Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Railway Co. v. Cramer, 232 U. S. 490, 34 Sup. Ct. 383, 58 L. Ed. 697; Railway Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703; Railway Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901.

In the Harriman Case above cited it is held the reasonableness of a stipulation of this kind in a contract of shipment is a question of law to be determined by the court.

[2, 3] It would seem that whatever might be the rule in our state courts where the contract is one to be wholly performed in this state, when the contract is for an interstate shipment the rule announced by the Supreme Court of the United States must control, and the question of the reasonableness of the contract is not one of fact to be tried by the jury. Railway Co. v. Word, 159 S. W. 379. If, however, the rule was otherwise and a plaintiff, upon showing facts which would justify the jury in finding that he could not, by reasonable diligence, have brought his suit within the time stipulated in the contract, would be entitled to have the jury determine whether the time stipulated should be enforced, no such facts were shown in this case. The only reason offered by the plaintiff for his failure to bring the suit within the 40 days was that he could not know the extent to which the cattle were injured until he had given them time to recuperate, and for this reason he could not accurately determine the amount of damage within the 40 days. He testified that he saw the condition of the cattle when they arrived at Hockley, knew the number of dead, and saw the external injuries which the others had received, and reasonable minds cannot differ in the conclusion that he could have ascertained the approximate amount of his damage in ample time to have filed his suit in 40 days. He was not required, in order to bring his suit, to know with absolute accuracy the amount of his damage. Such being the state of the evidence even under the rule contended for by the appellant, there was no issue of fact to submit to the jury on the question of the enforceability of the contract.

[4] There is no merit in appellant's contention that the provision in the contract that no suit thereon can be maintained unless brought within 40 days after the damage claimed occurred is invalid because consideration for such agreement was illegal, or because there was no consideration therefor. The first paragraph in the contract of shipment contains the following clause:

"That whereas, the said party of the first part transports the live stock covered by this agreement, at the reduced rates named herein, only as per the following rules and regulations."

Following this clause are the various provisions and agreements contained in the contract, among which is the 40-day limitation agreement. Appellant insists that the clause in the contract above stated shows that the consideration for the contract was the transporting of the cattle at a less rate than that authorized by the rates prescribed by the Interstate Commerce Commission, and therefore was an illegal consideration. The evidence does not show what rates were prescribed by the Interstate Commerce Commission, and it is not shown what the term "reduced rates," as used in the contract, meant. It is fair to presume that it referred to the less of two rates allowed by the Commission. The contract contains a number of provisions requiring the shipper to perform various services, and assume liabilities in connection with the shipment which are not necessarily required of shipper of live stock, and it is not improbable that the Commission prescribed a different rate for shipment under contracts of this kind from those prescribed under contracts that did not contain such provisions. The following indorsement appears across the face of the contract:

"Subject to correction as to rates, weights and classification so as to conform to the rates, rules and regulations prescribed by the Railroad Commission."

The statement of facts shows that it was agreed by the parties upon the trial:

"That the contract of shipment was made on the published tariff rate and according to the

provisions and limitations as shown by the contract."

In the absence of any evidence showing that the rate was unauthorized, we cannot see how it can be seriously contended that the rate charged was illegal. Neither the pleadings nor evidence raised the issue of want of consideration for the contract; and that issue is certainly not in the case. Newton v. Newton, 77 Tex. 508, 14 S. W. 157.

[5] By an act approved March 4, 1915, Congress amended the Hepburn Act, regulating interstate commerce by inserting therein the following provision:

"That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of [such] claims for a shorter period than four months, and for the institution of suits than two years; provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

This act was in effect at the time of the trial in the court below, and appellant contends that the question of the validity of the 40-day limitation clause in the contract is controlled thereby. This contention cannot be sustained. The contract sued on was executed, and the rights and liabilities of the parties therein fixed long before the passage of the act. If Congress had authority to pass a law impairing the obligation of a contract, there is nothing in the language of the act to indicate that it intended it to have any retroactive effect.

The rule that an executory contract for the performance of an act, made illegal after the contract was entered into will not be enforced, has no application to an executed contract. The Supreme Court of Alabama in the case of Railway Co. v. Bynum, 69 South. 820, holds the act above mentioned does not affect rights of actions which accrued prior to the passage of the act. This holding seems to us to be obviously sound.

We have considered and discussed all of the material questions presented by the record, and from the conclusions above expressed it follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.