CHICAGO, R. I. & G. RY. CO. v. SHROYER.
(No. 1210.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1917. On Motion for Rehearing, Oct. 17, 1917.)

1. CARRIERS ⊗⇒218(1) — INTERSTATE SHIPMENTS—TIME FOR BRINGING ACTION—VALIDITY.

Under the Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379), a provision of a contract for the shipment of live stock that no action against the carrier on any claim shall be maintained unless commenced within six months after the cause of action accrued is valid.

2. EVIDENCE ⊗⇒69—PRESUMPTION—LAWFUL CONDUCT OF BUSINESS.

An interstate carrier having a right to provide by contract that any action for any loss, etc., shall be commenced within six months after the cause of action accrued, and being required by the Interstate Commerce Act to treat all shippers equally, it will be presumed, without evidence to the contrary, that the carrier was conducting its business lawfully, and that such a contract was lawful.

3. EVIDENCE ⊗⇒65—PRESUMPTION—KNOWLEDGE OF LAW.

Without evidence to the contrary, it will be presumed that both the carrier and the shipper know the law as to the validity of a contract, stipulating that any action for loss, etc., shall be brought within six months after the cause of action accrued.

4. CARRIERS ⊗⇒46 — CONTRACTS FOR INTERSTATE SHIPMENT—CONSTRUCTION.

Contracts for interstate shipment are governed by the acts of Congress, the agreement of parties, and the common-law principles accepted and enforced in federal courts.

5. CARRIERS ⊗⇒35—INTERSTATE SHIPMENT OF LIVE STOCK — LIMITATION OF TIME FOR BRINGING ACTION—VALIDITY.

A provision in a contract for an interstate shipment of live stock that, in consideration of the lower rate allowed to the shipper on a valuation of property, instead of the rate at the carrier's risk, as provided by the tariff rates, no action against the carrier for any loss, etc., should be maintained unless commenced within six months after the cause of action accrued, and that if any action was commenced after that time the expiration of such time should be conclusive evidence against the validity of the claim, could not be waived by the carrier, as to enforce it against one shipper and waive it as to another would permit discrimination between parties, and allow, by indirection, what the carrier could not do directly.

On Motion for Rehearing.

6. CARRIERS ⊗⇒35—INTERSTATE CARRIAGE OF LIVE STOCK—LIMITATION AS TO TIME FOR BRINGING ACTION—SCHEDULE FILED WITH INTERSTATE COMMERCE COMMISSION.

Under Interstate Commerce Act, § 6 (Comp. St. 1916, § 8569), requiring a carrier to file with the Interstate Commerce Commission schedules of all rates, stating all privileges granted and any rule which may affect any rate and section 20, as amended by the Carmack

Amendment (Act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. 1916, §§ 8604a, 8604aa]) requiring carriers receiving freight to issue a bill of lading, and that no contract, etc., shall exempt carriers from liability under the act, a stipulation in a contract. for the interstate shipment of live stock that, in consideration of a lower rate upon a declared valuation, no action for loss, etc., should be maintained unless brought within six months after the cause of action accrued was not invalid because not filed as a part of the schedules filed with the Interstate Commerce Commission, where the carrier had filed the rate upon declared valuations as to contracts executed on blanks furnished by it and the rules affecting the rate, as such condition was not a service rendered to the shipper in transportation, but an obligation to be performed by the shipper in consideration of the lower rate.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by W. H. Shroyer against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

N. H. Lassiter, of Ft. Worth, and C. E. Gustavus, of Amarillo, for appellant. W. A. Davidson, of Amarillo, for appellee.

HUFF, C. J. The appellee, Shroyer, brought suit against the Chicago, Rock Island & Gulf Railway Company to recover damages in the sum of $1,900, on account of alleged injury to a shipment of cattle from Glen Rio, Tex., to Langford, Miltonville, and Salina, Kan., on April 22, 1914. It was alleged that 3 of the animals were lost, and 10 were so injured as to die, and that the remainder of the shipment was depreciated in market value by reason of delay and improper handling en route. The railway company answered, after general denial that the contract controlling the rights of the parties entered into at the time of delivering the cattle stipulated, as a condition precedent to bringing any suit for damages on account of loss or injury to the property covered by the contract, that the shipper give notice in writing of the claim for such damage to some general officer, claim agent, or station agent of the defendant company not later than 90 days after the date of the loss or injury claimed, which stipulation the defendant pleaded the plaintiff had failed to comply with; and further pleaded a stipulation as a condition precedent to claiming or recovering damage for any loss or injury to the stock that the shipper should give notice in writing of the loss or injury to some general officer, claim agent, or station agent, or to some officer of the delivering line before the stock was moved from the place of destination, and that such notice in any event to be given within one day after the delivery of the stock at destination, in order that such claim might be fully and fairly investigated, which stipulation the defendant averred was not given; and it further pleaded that the stipulation in the contract, providing that no suit or action against the defendant

for the recovery of any claim should be sustainable in any court unless such suit or action should be commenced within six months next after the cause of action accrued, which stipulation the defendant pleaded was not complied with; that the suit was filed long after the expiration of said time. It further pleaded that this was an interstate shipment, controlled by the federal laws, and that the defendant had made, filed, and published tariffs and schedules regulating shipments of this character, which tariff and schedules gave the shipper the option of shipping at carrier's risk, without limitation or liability or at a lower freight rate at the owner's risk, which latter shipment would be controlled by the live stock contract. The plaintiff answered by supplemental petition that the agents of the carrier at destination knew the condition of the cattle when they arrived, and that the plaintiff filed written claim for damage with the general agent of the defendant at Amarillo, Tex., about a month after the shipment, and that thereafter, on several occasions, there were negotiations between the plaintiff and the general agents with reference to the claim and between plaintiff and J. S. Jones, the defendants' traveling claim adjuster, which negotiations amounted to a waiver of the stipulation providing for the filing of suit within six months, and that except for such conversations and negotiations suit would have been filed within six months.

We have decided to consider only one question presented under the eighth, ninth, and tenth assignments, and other assignments, assailing the verdict of the jury. The general proposition presented by appellant under these various assignments is:

"The provisions of paragraph 15 of the contract cannot be legally waived, and the court in permitting such waiver deprived defendant of its rights and defenses under the federal law."

. The fifteenth provision of the bill of lading is:

"That no suit or action against the first party for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity unless such suit or action be commenced within six months next after the cause of action shall accrue, and should any suit or action be commenced against the first party after the expiration of six months the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

The first party named in the contract is the appellant company. The suit was not instituted until more than a year after the cause of action accrued. Without giving the evidence admitted over the objection of the appellant, we shall treat it as admissible, and when considered as a whole, that it was sufficient to show waiver by estoppel of the provision of the contract above set out.

[1] Under the Interstate Commerce Act relative to carriers, the provision of the contract is valid under the holdings of the Su-

preme Court of the United States, and by the courts of this state. Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556; Railway Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Betka v. Railway Co., 189 S. W. 532; Railway Co. v. Smyth, 189 S. W. 70.

[2, 3] The railroad having a lawful right to enter into such a contract, and being required by the act to treat all shippers upon equal terms, and by no device whatsoever to give one shipper a more liberal contract than another, in the absence of evidence to the contrary, the presumption will prevail that the contract of shipment in this case was a lawful one, and that both appellant and appellee knew the law. An interstate carrier is entitled to the presumption that it is conducting its business lawfully. Railway Co. v. Beaham, 242 U. S. 148, 37 Sup. Ct. 43, 61 L. Ed. 210.

[4] Contracts for interstate shipment are governed by the acts of Congress, the agreement of parties, and the common-law principles accepted and enforced in federal courts. Beaham Case, supra. When enforcement of the principles of the common law would, as formerly applied by the courts, conflict with the act of Congress on the subject, or render the spirit or intent of the act with reference to discrimination or rebates nugatory, we apprehend the federal courts would not hesitate to give effect to the act over the principles of the common law.

[5] The contract of shipment in this case, in so far as lawful, fixed the mutual obligations of the parties for the services to be performed in the transportation of the cattle and the liability and responsibilities of the parties thereunder. A provision of this contract, lawful within itself, we do not think can be enforced as to one shipper and waived as to another. The courts will not open the door for such discrimination between parties or rebating as to one. Railway Co. v. Landa, 187 S. W. 358. In this case the road never admitted any liability, or that it was negligent. All that may be said with reference to the matter is that by its conduct it induced the appellee to believe that it was not insisting upon the six months' limitation fixed by the contract of shipment. If the road could not by express agreement give the shipper in this case a longer time to institute suit, which was not given to all others, then it could not do indirectly what it could not do directly. The contracts of shipment in this case stipulate, in consideration of the reduced rate charged and other considerations, that it was mutually agreed between the parties that:

"Each and every carrier receiving said cars for transportation shall be deemed to adopt the terms and conditions hereof and assume the like liabilities, and shall be entitled to all the provisions, exemptions, and all limitations of liability and other stipulations, the measure and adjustment of damages herein contained."

This contract on its face shows to have been issued in consideration of the lower rate allowed to shippers, and that it was not therefore at the carrier's risk, as provided by the tariff rates which the Interstate Commerce Commission. Clause 15, heretofore set out, follows the above provision. In the case of Railway Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836, it is said:

"No carrier may extend 'any privileges or facilities' save those which have been duly specified; and, as the terminal services incident to an interstate shipment are within the federal act and the condition of liability while the goods are retained after notice of arrival are stipulated in the bill of lading under the filed regulations, the conditions thus fixed are controlling, and parties cannot substitute therefor a special agreement."

See, also, Railway Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453.

The bill of lading stipulated for the adjustment of damages by giving notice within the specified time and for instituting suit for damages received while in course of transportation, within six months. Clause 15 expressly provides, if suit is commenced after six months, "the lapse of time shall be constituted conclusive evidence against the validity of such claim." If the appellant could waive this provision one party shipping could prove his claim, but if it should not waive as to another a failure to file suit in time is conclusive evidence as to such against the validity of the claim. This would be nothing less than discrimination between the two shippers. In the case of Phillips v. Grand Trunk Railway Co., 236 U. S. 662, 35 Sup. Ct. p. 444, 59 L. Ed. 774, the Phillips Lumber Company filed suit for overcharge on freight. Upon a petition of a different company the Interstate Commerce Commission found that the road's advance of two cents on the freight charges unjust. After this decree the Phillips Lumber Company brought suit for overcharges which under the decree of the Commission it was entitled to recover. The lower court sustained a general demurrer to the complaint of the Phillips Company, and from a judgment rendered thereon the case was taken to the Supreme Court. It was urged that under the statutes of Michigan a defendant was not permitted to take advantage of the statute of limitation by a general demurrer, which statute we presume is somewhat like our own in requiring that the bar of limitation be specially pleaded. Mr. Justice Lamar, for the Supreme Court, said in that case in part:

"This will more distinctly appear by considering the requirements of uniformity which, in this, as in so many other instances, must be borne in mind in construing the commerce act. The obligation of the carrier to adhere to the legal rate, to refund only what is permitted by law, and to treat all shippers alike would have made it illegal for the carriers, either by silence or by express waiver, to preserve to the Phillips Company a right of action which the statute required should be asserted within a fixed period. To have one period of limitation where the complaint is filed before the Commission, and the varying periods of limitation of the different states, where a suit was brought in a court of competent jurisdiction, or to permit a railroad

company to plead the statute of limitations as against some, and to waive it as against others, would be to prefer some and discriminate against others, in violation of the terms of the commerce act, which forbids all devices by which such results may be accomplished. The prohibitions of the statute against unjust discrimination relate, not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments, or the waiver of defenses open to the carrier. The railroad company therefore was bound to claim the benefit of the statute here, and could do so here by general demurrer."

Later, in the case of Railway Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. p. 542, 60 L. Ed. 948, the Supreme Court recognized the principle above announced. In the latter case flour was consigned to a grocery company by the milling company. Upon its arrival it was found to be damaged, and was left with the railroad company, which company afterwards sold it. Thereafter the milling company, as the consignor in whom the title then rested, sued the railway company for damages. The railroad company pleaded the failure of the milling company to make claim for damages in writing within four months, and, unless so made, that the company should not be liable; that this provision was a part of the bill of lading. It was sought to show by the milling company that the clause did not apply for the reason that the railway company had converted the flour and thus abandoned the contract. Mr. Justice Hughes said:

"But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed. Chicago & A. R. R. Co. v. Kirby, 225 U. S. 155, 56 L. Ed. 1033, 1038, 32 Sup. Ct. 648, Ann. Cas. 1914A, 501; Kansas City Southern R. Co. v. Carl [227 U. S. 639, 648, 33 Sup. Ct. 391, 57 L. Ed. 683, 686]; Atchison, T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173, 181, 58 L. Ed. 901, 905, 34 Sup. Ct. 556; Southern R. Co. v. Prescott, supra. We are not concerned in the present case with any question save as to the applicability of the provision and its validity; and, as we find it to be both applicable and valid, effect must be given to it."

In the above case the Supreme Court found the notice sufficient, but it nevertheless holds that to permit the railway to waive or abandon would be in violation of the act of Congress. These plain intimations of the view by the Supreme Court should not be disregarded by us. The courts of Missouri have recognized these decisions of the Supreme Court as settling the question here involved in favor of appellant's contention, in a number of cases. Thompson v. Railway Co. (Mo. App.) 185 S. W. 1145; Kemper Mill Co. v. Ry., 193 Mo. App. 466, 186 S. W. 8; Donoho v. Railway Co., 193 Mo. App. 610, 187 S. W. 141; Johnson v. Railway Co. (Mo. App.) 187 S. W. 282;

Harelson v. Railway Co. (Mo. App.) 191 S. W. 1068.

The appellant in this case presents quite a number of assignments, which if our view on the above question is correct will render it unnecessary to pass upon or to further consider.

The judgment will be reversed and remanded.

BOYCE, J., not sitting.

On Motion for Rehearing.

It is stated in the written argument by appellee, on motion for rehearing, that it is not disputed by appellee that the court's holding is correct that the stipulation set out in the original opinion cannot be waived, "provided such stipulation was lawful in the first place."

[6] It is contended that the stipulation is not valid because not part of the schedule filed with the Interstate Commerce Commission and for that reason is void. It is not contended that there were not two rates, one at the carrier's risk and one at the shipper's risk, as stated in the contract of shipment. It is recited therein that the rate charged "being less than the rate charged for shipments at carrier's risk for which reduced rates and other consideration, it is mutually agreed between the parties hereto as follows." Several paragraphs follow this stipulation, among which is the fifteenth paragraph quoted in the original opinion, with reference to bringing suits for injuries received within six months. The live stock tariff filed with the Interstate Commerce Commission and introduced in evidence, among other things, provides:

"The rates named in this tariff apply only on shipments of live stock when contracts are executed by the shippers and the carriers on the blank furnished by the carriers and are based on declared valuation by the shipper at the time the contract is signed, not to exceed the following: Each horse, $100.00; each ox, bull or steer, $50.00. * * * Where the declared valuation exceeds the above an addition of ten per cent. will be made to the rate for each one hundred per cent. (dollars?) or fraction thereof of additional valuation per head."

The contract or bill of lading in this case shows the valuation on the stock shipped was, for each horse $100, each ox, bull, or steer $50, etc.; that is, that the lower rate was agreed to and accepted by the shipper, in consideration of which he agreed to the six months' limitation clause. Upon the trial of this case in the court below it was admitted by appellant "that the stipulation of the live stock contract with regard to giving notice of loss or injury and of bringing suit is not included in the tariff that this company had on file at that time." Section 1 (Comp. St. 1916, § 8563) of the Interstate Commerce Act defines "transportation." Section 6 (section 8569) requires the carrier

to file with the Interstate Commerce Commission—

"schedules showing all the rates, fares and charges for transportation between different points. * * * The schedules * * * shall * * * state separately all terminal charges, * * * and all other charges which the Commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part of the aggregate of such aforesaid rate, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee. * * * The provisions of this section shall apply to all traffic, transportation, and facilities defined in this act."

The amendment of section 20 (section 8604a) known as the Carmack Amendment, provides that:

The common carrier receiving freight for transportation "shall issue a receipt or bill of lading therefor, * * * and no contract, receipt, rule, or regulation * * * shall exempt such common carrier, * * * from the liability hereby imposed."

The Supreme Court of the United States has held frequently under the above act of Congress a stipulation limiting the time for bringing suit and for notice is valid and binding, and should be enforced. However, it is urged here that unless such limitation is filed with the Interstate Commerce Commission with its schedule of rates that such provision is void; that as it was agreed on at the trial that the stipulation was not included in the tariff filed by appellant with the Commission, no presumption will be indulged in favor of the carrier. It will be noted that it is not agreed that the contract of shipment was not on file with the Commission, but only that it was not filed with the schedule rates. It will be observed in the act that Congress treated the subject of tariff rates, fares, and charges separate from the contract or agreement between the carrier and shipper. It is true the contract to be valid must be based upon a valid rate, filed with the Commission, together with all privileges or facilities, and any rule or regulation which changes, affects, or determines any part of the rate or value of the services rendered the shipper. The rules, regulations, or service by the carrier, rendered to the shipper, which affect the rate are to be filed. It is not the stipulation in the contract which the shipper is to perform that is to be filed. The carrier in this case, however, filed the rate upon declared valuation when the contracts are executed, upon blanks furnished by the carriers. The shipper declared the valuation as per the rate filed, and signed the contract upon the blank furnished. The rules and regulations were filed affecting the rate, thereby complying with the statute. The shipper, on his part, agreed after the transportation was complete, if damaged, he would sue for his damages within six months. This we do not interpret as service, privilege, or facilities rendered the shipper in the transportation, but was an obligation on the shipper to be performed in consideration of the lower rate given him for the

transportation. In the case of Railway Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 178, 60 L. Ed. 453, the goods were received for transportation under the terms of the bill of lading prepared in a form approved and recommended by the Interstate Commerce Commission. The court said in that case:

"The recommendation of the Interstate Commerce Commission for the adoption of the uniform bill of lading was, of course, made in view of this legislation; and, while not intended to be and not in law binding upon the carriers, it is entitled to some weight."

The provision in that case fixed the charges in advance for storage as warehouseman. Schedules of tariff rates properly filed to that effect were not shown, and the contract was considered by the court as evidencing a proper charge, including such service. The case we think also suggests that it was not required of the carrier to file with the Commission the form of the contract or its various stipulations. This view is further strengthened by the case of Railway Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. p. 469, 60 L. Ed. 836. The tariff rules there introduced provided that the reduced rates would "apply on property shipped subject to the condition of carrier's bill of lading." The particular clause of the bill of lading in issue in that case does not appear from the opinion to have been filed with the schedule, but the court held, while the goods are retained after notice of arrival, as stipulated in the bill of lading, under filed regulations, the conditions were fixed, and the parties could not substitute therefor a special agreement. The rules filed in this case were that the tariff fixed applied on the shipment of live stock "where contracts are executed by the shipper and carrier on the blanks furnished by the carriers." The conditions fixed by the contract to be complied with after termination of the shipment are stipulated in the contract under the filed regulations and the parties cannot substitute a special agreement to waive the stipulation in the contract. It is insisted that in the case of Railway Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, it is intimated that the live stock contract should be part of the rates filed. We do not so regard the case. In discussing the question arriving at the damages to the shipment on stock valued by agreement, the court said that the rate sheet did not include the contract sued on, but this was of no vital significance. However, the court stated in that case that there was no objection made in the court below. It is there further said:

"In any event, the rate sheets do provide for a choice between two rates; one with and one without declared valuation."

The Supreme Court recognizes it as settled that the rights and liabilities in connection with shipment depend upon the acts of Congress, the bill of lading, and common-law principles accepted and in force by the federal courts. In order to determine the va-

lidity and effect of restrictions upon liability by the bill of lading, it is important to consider the schedules on file. Express Co. v. Byers, 240 U. S. 612, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197. It appears the Interstate Commerce Commission has approved and recommended a form for a bill of lading. Western Transit Co. v. Leslie, 242 U. S. 448, 37 Sup. Ct. 133, 61 L. Ed. 423. As we understand, however, the Commission disclaimed the power to prescribe the forms of the bill and enforce it, but simply recommended a form. Section 1 of this act makes it the duty of the carrier to establish and enforce just rules, etc. "The issuance, form and substance of tickets, receipts and bills of lading," but the form and substance of the bill of lading is not required to be filed with the Commission, as we read the act. It is only the schedule of the rates and rules and regulations with reference to the transportation. The holding of the Interstate Commerce Commission, in so far as we have been able to ascertain, has left with the carriers the form of the bill of lading where the act placed it. In so far as we have been able to find, the Supreme Court has not held a bill of lading containing limitations void as to such because not filed with the Interstate Commerce Commission. The universal holding appears to be when the bill of lading or contract is based upon a tariff duly filed and approved and when in consideration of the lower rate so filed the contract is entered into, the stipulation is valid. Railway Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 542, 60 L. Ed. 948, and authorities cited; Railway Co. v. Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265.

It is urged by appellee that the case of Erie Railway Co. v. Stone, 244 U. S. 332, 37 Sup. Ct. 633, 61 L. Ed. 1173, holds that the bill of lading limiting liability must be duly published and filed with the Interstate Commerce Commission. Possibly some of the expressions of the opinion may be given that interpretation. It occurs to us, however, that this case only holds that the right to contract for limited liability is based upon tariff classification duly published, and does not also undertake to hold that the form of the bill of lading shall also be published as part of the tariff and rules governing transportation. We think the amendment of section 20 of this act (sections 8604a, 8604aa, U. S. Compiled Statutes 1916, vol. 8) with reference to bills of lading evidence the fact that Congress did not consider that the bill of lading had to be filed with the Commission and published as part of the rate. The amendment now declares such stipulation for notice and limitation void if less than a certain time specified in the act. This amendment was not in effect at the time of the shipment in this case.

The presentation of the question upon motion by appellee has been forceful, and it appears to us may be a reasonable interpretation of the statute, but after examining quite a number of cases by the Supreme Court we find no case passing upon provisions of like kind that will justify us in reaching the conclusion that that court has ever placed its holding as to the validity of such limitations in bills of lading upon the ground that such provision must first be filed with the Interstate Commerce Commission as part of the carrier's rate sheet.

The motion will be overruled.

BOYCE, J., not sitting.