## Atchison, Topeka & Santa Fe Railway Company v. A. S. Veale & Company.

### Decided April 8, 1905.

**1.—Amendment to Pleading—Injury to Cattle—Negligence.**

Where in an action for damages to cattle during shipment plaintiffs' original petition alleged negligence in that the cattle were detained on the cars after arrival at destination for 24 hours without feed or water before being unloaded, an amendment alleging that the damages were caused by the

cattle having been unloaded and detained for 24 hours in muddy and unsuitable pens without feed or water, did not set up a new cause of action so as to let in limitations.

**2.—Cattle Shipment—Measure of Damages—Difference in Value.**

In an action for damages to cattle during shipment resulting from their having been kept in muddy pens without feed and water after their arrival at destination, the measure of damages, in the absence of a market value at the place of destination, was the difference between the actual value of the cattle in their condition at the time they were delivered to plaintiffs, and what their actual value would have been when delivered had they been detained and held with ordinary care.

**3.—Same—Pens—Pleading and Proof.**

An allegation that plaintiffs' cattle were kept in unsuitable pens was sufficient to admit proof that they were kept in a muddy inclosed lane about a mile long and 300 yards wide, which seems to have been but an extension of what was generally designated as the pens.

Appeal from the District Court of Eastland. Tried below before Hon. J. H. Calhoun.

*Ed. J. Hamner* and *J. W. Terry*, for appellant.—1. Where the original petition seeks damages to a shipment of cattle because they were detained on the cars after arrival at their destination for twenty-four hours, without feed or water, before being unloaded; and, more than two years thereafter, the amended pleading seeks damages to the shipment of cattle because they were unloaded and detained in muddy and unsuitable pens, such amended pleading sets up a new cause of action, founded on a separate and distinct tort, and the new cause of action is barred by the statute of two years' limitation. Lumber Co. v. Water Co., 94 Texas, 462, and cases cited.

2. The primary measure of damages to a shipment of cattle is the difference between their market value at the time, in the place and condition in which they should have been delivered, and their market value at the time, in the place and condition they were delivered. If said cattle have no market value at their destination, then their market value at the nearest place to their destination where they have a market value, less the cost of transporting them to such place, is the test for the secondary measure of damages. And not until it has been shown that said cattle have no market value can intrinsic value be resorted to as a measure of damages. Railway v. Chittim, 40 S. W. Rep., 24; Railway v. Stanley, 89 Texas, 42; Railway v. Williams, 31 S. W. Rep., 558.

3. Damages occurring at a different time and place, and occasioned by a different cause than is pleaded, can not form the basis of a recovery, and, therefore, evidence of such damages is not admissible. Railway v. Hennesey, 75 Texas, 157; Railway v. Summers, 49 S. W. Rep., 1107; Railway v. Chittim, 40 S. W. Rep., 24; Railway v. Herring, 36 S. W. Rep., 130; Telegraph Co. v. Henry, 87 Texas, 167; Wallace v. Bogel, 62 Texas, 638.

*D. G. Hunt*, for appellee.—Appellees having sued appellants for damage caused them by breach of contract for the transportation of one

certain lot of cattle, and also damages for retaining possession of said cattle on board its cars, an amendment claiming no additional element of damage, but simply alleging that said cattle were retained on board the cars and in the pens of appellants, states no new cause of action.   47 S. W. Rep., 54; 42 S. W. Rep., 241; 41 S. W. Rep., 123; 40 S. W. Rep., 1043; 40 S. W. Rep., 1060; 68 Texas, 370; 63 Texas, 529.

CONNER, Chief Justice.—The appellee company was the owner and shipper of 1,180 head of cattle, or two train loads, from Albany, Texas, to Ochelata, Indian Territory.   The shipment was made from Albany over the Texas Central Railroad to Dublin, Texas, thence over the Fort Worth & Rio Grande Railway to Fort Worth, Texas, thence over the Gulf, Colorado & Santa Fe Railway to its connection with the appellant railway company, whence the latter transported said cattle to Ochelata.   Appellees sued, alleging the execution of a contract with the Texas Central Railroad Company at Albany of a rate of $57.50 per car for the shipment.   It was further alleged that, upon the arrival of the cattle at Ochelata, the appellant company refused to deliver the cattle to appellees until an additional freight of $7.25 per car for the thirty-three cars used in the shipment was paid; that appellees, at the inception of the shipment, had paid the Texas Central Railroad Company the full amount of freight as then contracted for, and was unprepared to make immediate payment of the additional freight demanded by appellant; that, until appellees could do so, and did do so, appellant retained possession of said cattle at Ochelata, in muddy pens, without feed and water, whereby they were greatly damaged.   The trial resulted in a judgment in favor of the Fort Worth & Rio Grande Railway Company and of the Gulf, Colorado & Santa Fe Railway Company, but against the Texas Central Railroad Company for the additional freight demanded by appellant, to wit, the sum of $239.25, with six percent per annum from May 5, 1902, and against the appellant company for a total damage of $1,500 done said cattle.   From this judgment the appellant company alone appeals.

Appellees, in their original petition, which was filed on June 24, 1903, in alleging their damages at Ochelata, averred, in substance, that said cattle were detained on the cars after their arrival at that place for twenty-four hours, without feed or water, before being unloaded, and hence damaged as alleged.   The trial was had, however, upon an amended petition filed by appellees on the 8th day of August, 1904, in which the damages to the cattle at Ochelata were alleged, in substance, to have been caused by having been unloaded and detained by the appellant in muddy and unsuitable pens, without feed and water, as a result of which the damages alleged were sustained.

Appellant first insists, under appropriate assignments of error, that the amended petition sets up a new cause of action which was barred by the two years' statute of limitations, and that hence its special exception so urging should have been sustained, and that its special charge so instructing the jury should have been given by the court.   The court, in its submission of the cause, proceeded upon the theory, as the evidence established, that the appellant company was not bound by the

contract of the Texas Central Railroad Company for the through freight rate, but was authorized to detain appellee's cattle until the additional sum demanded by it had been paid, but instructed the jury, in effect, that the duty of appellant was to provide suitable pens, and to exercise ordinary care while detaining appellee's cattle. We think the gravamen of appellees' cause of action, as presented in the evidence and in both the original and amended petitions, was a want of due care while detaining appellees' cattle at Ochelata. If so, the fact that they were detained in appellant's pens, rather than in the cars in which the shipment was made, is immaterial. Negligence in failing to exercise due care in either instance constitutes the material matter. The fact that, in the amended petition, it was averred, in addition to the allegations of the original petition, that the pens were muddy, which also resulted in injuries, amounts, in our judgment, but to an amplification of the cause of action as originally made, and not to a new cause of action as appellant contends. (See Railway Co. v. Irvine, 64 Texas, 523; Scoby v. Sweat, 28 Texas, 729; Bremond v. Johnson, 1 Texas Civ. App., 325; Tynberg v. Cohen, 32 S. W. Rep., 158; Railway Co. v. Partin, 33 Texas Civ. App., 173, 76 S. W. Rep., 237, and authorities therein cited.) We therefore think the court properly overruled said exceptions and refused said charge. Appellant's first, second, third and fourth assignments of error are hence overruled.

Other questions need very brief notice  The argument of counsel complained of in the fifth assignment is in substantial respects similar to that passed upon by us in the case of Texas Central Railroad Company v. O'Loughlin (12 Texas Ct. Rep., 102), and held not to constitute reversible error. A writ of error was refused by the Supreme Court in that case; and, without wishing to be understood as in all respects approving the argument, we nevertheless, under the authority of the O'Loughlin case, and under the circumstances of this case and the court's charge to disregard the argument, overrule said fifth assignment.

We find no reversible error in the court's rulings in the admission of evidence. The evidence of a want of a market for cattle, and of their actual value at Ochelata, to which objection is made in the tenth assignment, was on the part of witnesses who qualified themselves to testify thereto. In the absence of a market at said place, to which fact one or more of the witnesses testified, the actual value was the test, and not necessarily the value in the market at ‚the nearest place having a market for such cattle, less the cost of transportation. The market price at such place, less cost of transportation, would be admissible as a circumstance to be considered, with other evidence, in determining the actual value at destination, but it is not the test. In the absence of market price at Ochelata, the true measure of damage was as given by the court, viz., "the difference, if any, between the actual value of said cattle in their condition at the time they were delivered to the plaintiffs, and what their actual value would have been when so delivered to the plaintiffs had they been detained and held with ordinary care."

It was shown that, from the stock pens into which appellee's cattle were unloaded, an enclosed lane extended about one mile to the line of the Osage Nation. This lane was called the quarantine lane, because the pens and lane were in the Cherokee Nation, where cattle were sub-

ject to quarantine regulations, whereas the Osage Nation was not, and by driving cattle from the pens through the lane such regulations were avoided. This lane was from one to three hundred yards wide, and in very bad condition. The evidence tends to show that, by the direction of appellant's agent, appellees' cattle were held in said lane for several hours, and were thereby damaged. Objection was made to this evidence on the ground that the petition contained no such allegations. No such averments were specifically made, but, we think, were sufficiently comprehended within the general allegations relating to the pens and their condition. A pen, in the sense under consideration, is but an enclosure of greater or less dimensions, and with no requisite form. The lane was enclosed—it seems to have been but an extension of what was generally designated as the pens—and we think the court's ruling correct.

We think the evidence sustains the verdict to the effect that appellant was negligent, as alleged, and that appellees' cattle were damaged in the amount of the verdict. The evidence also establishes the material averments of appellees' petition that relate to appellant in other particulars, and the motion for new trial was therefore properly overruled.

Complaint is made that the judgment is so framed as to adjudge the costs of the Fort Worth & Rio Grande and the Gulf, Colorado & Santa Fe Railway Companies against the appellant. It is not very clear that it was so intended, but, to remove all liability of misconstruction on the question, the judgment below will be so reformed as that the companies in whose favor the judgment was rendered shall recover all costs by them incurred of and from appellees. In all other respects the judgment below will be affirmed.

*Affirmed.*

Writ of error refused.