MISSOURI, K. & T. RY. CO. OF TEXAS v.
NEALE et al.  (No. 1445.)

(Court of Civil Appeals of Texas.  Texarkana.
April 28, 1915.  Rehearing Denied
May 6, 1915.)

1. APPEAL AND ERROR ☞662 — RECORD —
GROUNDS OF DECISION.
An assignment of error, not supported by
the record, will·be overruled.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 2850–2852; Dec. Dig. ☞
662.]

2. CARRIERS ☞218—CARRIAGE OF LIVE STOCK
—ACTIONS—TIME TO SUE—NEW CAUSE OF
ACTION.
In an action for delay in the shipment of
mules, the petition alleged that defendant car-
rier negligently failed to transport the ship-
ment to the destination in another state, but
transported them to another point, and there
held them in pens for five days or more beyond
the reasonable time for transportation, that
plaintiffs were compelled to divert the shipment,
and that by the delay plaintiffs were damaged,
because of the shrinkage and depreciated condi-
tion of the mules, to the amount of $900, and
also because of extra feed bills of $50 and
traveling expenses to look after the shipment
amounting to $40. ·An amended petition de-
clared on the same contract for delay in moving
the mules after they were loaded, for unloading
and detaining them in wet and muddy pens
without proper food and shelter, for failure to
keep them separated in reloading, and for al-
lowing them to overeat upon reaching the point
to which the shipment was diverted, whereby
they became foundered and unfit for sale, and
alleged damages at $950.  The contract stipu-
lated that suit should not be maintainable un-
less instituted within 91 days after the injury.
The amended petition was filed after the expira-
tion of such 91 days.  Held, that no new cause
of action was set up in the amended petition
within the purview of the stipulation.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec.
Dig. ☞218.]

3. CARRIERS ☞218—CARRIAGE OF LIVE STOCK
—ACTIONS—CLAIM OF LOSS.
The filing of a suit within 30 days was a
compliance with a stipulation in a contract for
the shipment of live stock, requiring the ship-
per to file a written claim of damages within
30 days after the injury.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec.
Dig. ☞218.]

Appeal from Fannin County Court; Rosser
Thomas, Judge.

Action by Jas. Neale and others against the
Missouri, Kansas & Texas Railway Company
of Texas.  From a judgment for plaintiffs,
defendant appeals.  Affirmed.

Head, Dillard, Smith, Maxey & Head, and
J. F. Holt, all of Sherman, and Chas. C. Huff,
of Dallas, for appellant.  S. F. Leslie and J.
W. Gross, both of Bonham, for appellees.

WILLSON, C. J.  In their original petition
filed December 23, 1913, appellees Neale, Gib-
son, and Clifton declared on a contract made
November 20, 1913, covering the transporta-
tion by appellant and connecting lines of
railway of two car loads (45 head) of mules
from Leonard, Tex., to Memphis, Tenn.  Ap-

pellees .alleged that appellant negligently
failed and refused to transport the mules to
Memphis and there deliver same to the con-
signee, their agent, as agreed upon, but in-
stead transported the mules to McAlester,
Okl., and there held them in pens for "five
days or more beyond the usual and reason-
able time required for transporting such char-
acter of shipment from the point of origin to
the said point of destination."  They then al-
leged that after appellant "finally refused to
transport said stock to their original destina-
tion, they were compelled to divert said ship-
ment, and did so divert it, and consigned the
same to plaintiffs' order at East St. Louis,
Mo."  They then alleged:

"That by reason of the unnecessary delay oc-
casioned by the defendant's breach of said con-
tract for the transportation of said stock and
the safe delivery at the original point of des-
tination, plaintiffs sustained damage by the con-
sequent shrinkage and loss of flesh and depre-
ciated appearance and condition of said mules,
amounting to $20 per head, a total of $900 for
said 45 head, and the further loss by reason of
said unnecessary delay occasioning extra feed
bills, amounting to $50.  That plaintiffs were
compelled, by reason of the breach of contract
by defendant, as aforesaid, to make a trip to
St. Louis, Mo., to see after said stock and ar-
range for their sale on the market there, thereby
occasioning an extra expense in railroad fare,
hotel bills, and incidental expenses for said trip
amounting to $40."

The cause was tried on appellees' first
amended original petition filed April 30, 1914.
In . this petition appellees declared on the
same contract, and sought a recovery of
damages of appellant for delay in moving the
mules after they were loaded on the cars at
Leonard; for unloading and detaining them
during several days, without proper food and
shelter, in wet and muddy pens at McAlester;
for failure, in reloading the mules at Mc-
Alester after such delay, to separate and
place together in the respective cars the mules
loaded therein at Leonard, and permitting
them, instead, "to become mixed and mingled
together" in the two cars; for delay in trans-
porting the mules after they were reloaded
at McAlester from that place to East St.
Louis, to which point, appellees alleged, they
were compelled to divert said shipment, and
did so divert and consigned the same to
plaintiffs' order; for injury to the mules
from overeating after they reached East St.
Louis, due to their starved condition, where-
by they "became foundered and unfit for
sale"; and for the expenses of a trip plain-
tiffs were forced to make to East St. Louis
because of the delay and improper reloading
of the mules complained of.  In this petition
appellees alleged the damages they had suf-
fered to be $950.

The trial court found the facts to be as
follows:  One of the cars was loaded 3 or 4
o'clock of the afternoon of November 20,
1913, and the other about 5 o'clock of the
morning of November 21st.  The two cars
left Leonard about 6 o'clock of said morning

of November 21st, and reached McAlester in the nighttime of that day over the Missouri, Kansas & Texas Railway Company's line of railway. That railway company then tendered the shipment to its connecting carrier, the Chicago, Rock Island & Pacific Railway Company, for carriage to Memphis. The latter company refused to receive the shipment because the mules had not been dipped, as required by the quarantine laws of Tennessee. Had it received and carried the mules on to Memphis it would not have been necessary to unload, feed, water, and rest them at McAlester, because they had not then been on the cars 28 hours. It became necessary, because of the delay at McAlester occasioned by such refusal, to unload the mules at McAlester to comply with the federal law applying to shipments of live stock. Therefore, on the morning of November 22d the mules were unloaded at McAlester by the Missouri, Kansas & Texas Railway Company. It was then cold, rainy weather. The pens in which the mules were placed were muddy, without shelter, and without facilities for properly feeding the animals. When the Chicago, Rock Island & Pacific Railway Company refused the shipment appellant notified appellees of the fact. Appellee Clifton then went to McAlester. He was told that the quarantine authorities of Tennessee required that the mules should be dipped in an arsenical solution before they were carried into that state. Said appellee replied that he "would not consent to having the mules dipped." When the animals had been three days and nights in the pens, said appellee "ordered said shipment diverted to East St. Louis." It was accordingly so diverted, moving to that point over "an entirely different route and by different carriers than it would have taken to the original point of destination." The shipment reached East St. Louis on the morning of November 26th, and the mules were sold on the market there. Because of the condition they were in on account of delay in transporting them, improper feeding and handling, and exposure they were subjected to while in the pens at McAlester, the mules sold for $900 less than they otherwise would have sold for. Appellant did not agree that the shipment should be diverted to East St. Louis. Under the quarantine laws of Tennessee, had the mules been carried into the state of Tennessee, they could not have remained there unless dipped in the arsenical solution "either at the point of origin, en route, or on arrival at destination." Neither appellees nor appellant's agent at Leonard knew what those laws were at the time the contract covering the shipment was made. On facts found by him the trial court concluded that:

"Plaintiffs sustained damages occasioned by negligence and want of ordinary care on part of defendant and connecting carriers in that said shipment was delayed en route beyond a reasonable time for its transportation, and by such delay and by reason of confinement of said mules in muddy pens and exposure and improper handling and lack of feeding properly, to the amount claimed, to wit, $900."

The appeal is from a judgment in favor of appellees in accordance with the conclusion reached by the court.

[1] The complaint made in the first assignment that the court held appellant liable for injury suffered by the mules after the shipment was diverted from Memphis to East St. Louis is not supported by the record. Therefore the assignment must be overruled. The judgment was based on a finding that the mules reached East St. Louis in a damaged condition, due to "delay in transportation, rough handling, lack of feeding, and storage in muddy pens." There was testimony to show, and the court found, that the mules were roughly handled, improperly fed and kept in muddy pens at McAlester, but there was no testimony tending to show, and the court did not specifically find, that they were subjected to such treatment after appellees directed that the shipment be diverted to East St. Louis. There was testimony showing, and the court found, that the shipment was delayed three days and nights at McAlester, but he did not specifically find, and the testimony did not show, that any of the delay there occurred after the order was given to divert the shipment. Instead, a reasonable inference from the testimony and findings made by the court is that the mules were promptly and with due care transported from McAlester to East St. Louis after the order was given to send them to the latter place.

[2] The contract covering the shipment contained a stipulation as follows:

"No suit shall be maintainable unless instituted within 91 days after the happening of the injuries, delay or delays complained of, any statute of limitations to the contrary notwithstanding."

It is not contended that suit was not commenced within 91 days after the mules were injured as claimed. The contention is that the cause of action as set up in the amended petition, filed after the expiration of the 91 days, was not the one set up in the original petition, but was a new one, and therefore that the stipulation applied and the suit was not maintainable. We are of opinion the contention should be overruled. The allegations in the two petitions, so far as same are material to the question made, are stated above. It will be noted that the contract declared upon is the same in each of the petitions, and that in each of them the recovery sought by appellees was on account of injury to the mules, which appellees alleged was caused by appellant's failure to comply with its undertaking to promptly and with due care transport them. The cause of action stated in the petitions was in effect the same, but it was set out with greater detail in the amended petition. Bigham v. Talbot, 63 Tex. 273; Railway Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 285; Railway

Co. v. Clippenger, 47 Tex. Civ. App. 510, 106 S. W. 157; Mayes v. Magill, 48 Tex. Civ. App. 548, 107 S. W. 364; Railway Co. v. Irvine, 64 Tex. 529; Railway Co. v. Veale, 39 Tex. Civ. App. 37, 87 S. W. 202; Railway Co. v. Buckalow, 34 S. W. 165.

[3] The contract contained another stipulation as follows:

"The shipper shall, within 30 days after the happening of the injuries or delays complained of, file with some freight or station agent of the carrier on whose line the injuries or delays occurred his written claim therefor, giving the amount. Shipper's failure to comply in time and manner with the requirements of this section shall absolutely defeat and bar any cause of action for any injuries or delays to said live stock as aforesaid, and no suit shall be brought against any carrier except against the carrier on whose line the injury or delay occurred, and no damages shall be recovered except those set forth in the required written notice and claim aforesaid and no greater amount than claimed in said notice."

Unless the filing of the suit within 30 days after the happening of "the injuries and delays complained of" was a compliance with the requirement of the stipulation it was not complied with. Appellant insists that the filing of the suit within the time specified was not a compliance with the stipulation. As we think it was (Phillips v. Tel. Co., 95 Tex. 638, 69 S. W. 63; Railway Co. v. Davis, 50 Tex. Civ. App. 74, 109 S. W. 422), it is not necessary to determine, as it would be if we thought otherwise, whether on the pleadings and facts in the record appellant had a right to complain of the failure· of appellees to comply with the requirement in the stipulation (Railway Co. v. Honea, 84 S. W. 267; Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 574; Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834).

Assignments not disposed of by what has been said are believed to be without merit.

The judgment is affirmed.