WESTERN TRANSIT COMPANY *v.* A. C. LESLIE & COMPANY, LIMITED.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 104. Argued December 19, 20, 1916.—Decided January 8, 1917.

Plaintiff consigned goods from Michigan to New York City over a "lake and rail" route constituted of defendant's steamship line as far as Buffalo and the line of a railway company thence onward. Plaintiff paid the freight, obtaining a reduced rate allowed in the tariff for this route by agreeing in the bill of lading to a maximum valuation and release of larger damages. A separate tariff, filed by defendant pursuant to § 6 of the Act to Regulate Commerce, entitled plaintiff to have the goods stored for a time at Buffalo without extra charge before forwarding to New York and to divert them to some other destination upon readjustment of rates. By direction of plaintiff, defendant was holding the goods stored under this arrangement when a part was stolen.

*Held* (1) That defendant was liable as carrier and not as warehouseman.

(2) That the damages could not exceed the maximum value agreed in the bill of lading and upon which the freight rate was based.

(3) That a letter written by defendant to plaintiff while the goods were so stored, acknowledging their custody, and stating that they would be held subject to a circular enclosed with the letter and which but described the terms of the storage as they were stated in the separate tariff, did not operate to create a contract of warehousing independent of the contract of carriage.

Every shipper is charged with notice of terms of the interstate tariffs governing his shipments.

A shipper by his bill of lading valued several tons of goods at not to exceed $100 per ton, and agreed that this as a maximum should govern the computation of any loss or damage for which the carrier might become liable. *Held,* that the maximum liability of the carrier for the loss of a part was not the total valuation so fixed, but the value, at the ratio of $100 per ton, of the part lost.

165 App. Div. 947, reversed.

THE case is stated in the opinion.

*Mr. Lester F. Gilbert* for plaintiff in error.

*Mr. Daniel J. Kenefick* and *Mr. Charles B. Sears* for defendant in error, submitted.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The Western Transit Company, operating steamers between Buffalo and other points on the Great Lakes, formed, with the New York Central Railroad, a "lake and rail" line between Michigan and New York City. Among the privileges and facilities offered by this line was the right "in transit of free storage and diversion at Buffalo." That is, the shipper instead of sending his goods from Michigan through to New York City, was entitled, without the payment of any extra charge, to have them stored at Buffalo for a period, to await further orders and be forwarded later to New York. The shipper was also given the privilege of "diversion";—that is of changing the ultimate destination of the stored goods upon proper adjustment of the rate. On September 23, 1908, A. C. Leslie & Co., Limited, the plaintiff below, delivered to the Western Transit Co., the defendant below, at Houghton, Michigan, for shipment over this line to New York City, 25 tons of copper ingots, with direction to store the same upon arrival at Buffalo to await further shipping directions. The copper arrived there September 30, and was placed in the Transit Company's warehouse. Nearly four months later about one ton of it was stolen from the warehouse. An action was brought by the shipper in the City Court of Buffalo to recover its value. The Transit Company denied all liability; but the court found that the loss was due to its negligence and held the company liable for the full value of the copper lost. The judgment of the City Court was affirmed by the

Supreme Court of New York at special term and also by the Appellate Division of that court. 165 App. Div. 947. Applications for an appeal to the Court of Appeals of New York having been denied, both by the Appellate Division and by the Chief Judge of the Court of Appeals, a writ of error from this court was granted on the ground that the decision below involved a federal question, namely: the construction and effect of the bill of lading and of tariffs filed under the Act to Regulate Commerce as amended. Act 1906, c. 3591, 34 Stat. 584.

The question before this court relates solely to the measure of damages. The shipper contends that it is entitled to the full value of the copper lost, which was $271.38. The carrier contends that the damages recoverable are limited to $94.10; that is, the value *not to exceed $100 a ton*. In support of this limitation it relies upon the fact that freight was paid at the rate of 18 cents per ton under a bill of lading and a tariff which names the following rates from Houghton, Michigan, to New York City:

"Copper ingots   .   .   .   value not to exceed $100 a ton, 18c. per ton

Copper ingots   .   .   .   value not expressed . . . . . . . . . . . 30c. per ton."

The shipper insists that it is enforcing the liability of the Transit Company not as carrier, but as warehouseman; and that the terms of its obligation as warehouseman are fixed, not by the bill of lading and the tariff provision quoted above, but wholly by the letter of November 26, 1908, and the circular therein referred to, which are copied in the margin.[1]

---

[1] The Western Transit Company, N. Y. C. & H. R. R. Line of Steamers.
Buffalo, N. Y., Nov. 26, 1908.

Messrs. A. C. Leslie & Company, Montreal, Que.

GENTLEMEN: Replying to your letter of 24th, instant, would advise you that we have in store here, lot 1036 ingot bars of copper, marked M. M. 102, as well as lot of 979 ingot bars, marked M. M. 97.

The Transit Company filed with the Interstate Commerce Commission, in addition to its general tariffs covering "lake and rail" rates, a separate tariff known as I. C. C. No. 236, covering specifically storage and diversion privileges at Buffalo, as set forth in the circular copied in

---

This copper came forward in our steamer, Buffalo, which unloaded here September 30th, and will be held here subject to our storage circular I. C. C. No. 236, copy of which I enclose.

                                    Yours truly,
     (Signed)                    EDWIN T. DOUGLASS,
                                    *General Manager.*

I. C. C. No. 236, Superseding I. C. C. No. 231.
The Western Transit Company, New York Central & Hudson River
              R. R. Line.
              General Office.
Copper and Copper Matte, Pig Lead and Spelter for Storage and Diversion at Buffalo.

The Western Transit Company will accept shipments of Copper and Copper Matte, Pig Lead and Spelter for storage and diversion at Buffalo, under the following rules:

1. The Western Transit Company, at request of owners, will furnish free storage on shipments of Copper and Copper Matte, Pig Lead and Spelter in transit, at Buffalo, for a period not exceeding four months.

2. If held longer than four months, it will be subject to a charge of one-half (½) cent per 100 pounds for each thirty (30) or part thereof so held.

3. Shipments held under this arrangement will be at owner's risk, and will not be accepted for storage unless arrangements are made with the undersigned previous to forwarding from Western Lake Ports.

4. Shipments ordered out of store will be charged at the through rate in effect at time the shipment originated, to points to which through rates are published by The Western Transit Company.

5. Shipments ordered to points to which no through rates are in effect via The Western Transit Company, will be charged at the local rate to and from Buffalo.

Issued May 15th, 1908.
Effective June 16th, 1908.

                                    EDWIN T. DOUGLASS,
                                *General Manager, Buffalo, N. Y.*

the margin. The filing of this tariff was required by the act (see *Goldenberg* v. *Clyde S. S. Co.*, 20 I. C. C. 527) since the general tariff did not specify the details of the storage and diversion privileges. The Act to Regulate Commerce as amended provides expressly (§ 1) that the term transportation includes storage. And § 6 provides that a carrier must file with the Interstate Commerce Commission tariffs "showing all the rates, fares, and charges for transportation" and "shall also state separately all . . . storage charges, . . . all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates."

The bill of lading, in a form similar to that approved and recommended by the Interstate Commerce Commission (14 I. C. C. 346), contains the following, among other provisions:

"It is mutually agreed in consideration of the rate of freight hereinafter named, as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained, and which are hereby agreed to by the shipper, and by him accepted for himself and his assigns as just and reasonable."

\*     \*     \*     \*     \*     \*     \*     \*

"To be held at Bflo. for orders.

"Value not to exceed $100.00 per net ton. Limited by written agreement.

"The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specified valuation named in case of loss or damage from causes which would

make the carrier liable, because of the lower rate thereby accorded for transportation."

\* \* \* \* \* \* .\* \*

*Conditions.*

\* \* \* \* \* \* \* \*

"The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

The release valuation clause in an interstate bill of lading when based upon a difference in freight rates is valid. *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 509. The limitation of liability by means of such valuation contained in the bill of lading continues although the service of carrying has been completed and the goods are held by the carrier strictly as warehouseman. *Cleveland, Cincinnati, Chicago & St. Louis Ry.* v. *Dettlebach,* 239 U. S. 588. The provisions of the bill of lading govern even where the goods are allowed to remain in the carrier's warehouse after giving receipt therefor and payment of freight. The carrier and the shipper can make no alteration of the terms upon which goods are held under a tariff, until there has been an actual delivery of the goods to the consignee. *Southern Ry. Co.* v. *Prescott,* 240 U. S. 632. The reasons are even more persuasive for holding that the terms of a bill of lading govern storage in transit, like that at Buffalo. The contention of the shipper that the letter of November 26 enclosing the circular created a contract of warehousing wholly independent of the contract of carriage is contrary to fact. The Transit Company's circular states "that free storage is furnished on shipments in transit" and that shipments "will not be accepted for storage unless arrangements are made with

the undersigned previous to forwarding from Western Lake Ports." Obviously free storage in transit was granted only to those who shipped over this "lake and rail" line. The shipper had enjoyed nearly two months' storage when the circular was received in answer to a letter of enquiry. It stated only what was contained in the tariff filed, which every shipper was bound to take notice of.

The contention was also made that the judgment below was correct, even if the bill of lading be held to govern the warehousing at Buffalo; because the agreed valuation clause properly construed fixes an amount far greater than the actual value for which judgment was rendered. The "released" or agreed valuation is "$100 per net ton." There were 25 tons in this shipment. It is insisted that, as the 25 tons constituted a single lot, $2,500 is recoverable for loss of or damage to the whole or to any part of the lot. This construction does violence to the language used and is unreasonable. The valuation clause fixes not an arbitrary limit of recovery but a ratio. In *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 656, where the released valuation clause was applied to a shipment consisting of two boxes and a barrel, and one box was lost, this court said, the consignor and carrier must have understood the agreed valuation to mean that the package contained "household goods of the average value per hundredweight of five dollars." The ratio is more naturally applied where the whole shipment is homogeneous. Under this bill of lading the shipper is entitled to recover not more than $100 a ton for each or any ton damaged or lost.

*Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.*