Application by Wallace Martin for writ of habeas corpus.    Relator discharged.

J. W. Akin and Weldon, McDonald & Cummings, all of Wichita Falls, Engelking & Dotson, of Electra, and Chas. L. Black, of Austin, for appellant.

T. F. Hunter, of Wichita Falls, and R. G. Storey, Asst. Atty. Gen., for the State.

HAWKINS, J. Relator was adjudged to be guilty of contempt in refusing to answer questions propounded by the grand jury, and seeks relief upon an original writ of habeas corpus. The record in the instant case is an exact duplicate of that in the case of Ex parte Jim Jennings (No. 6987) 240 S. W. 942, and Ex parte Miller (No. 6986) 240 S. W. 944, this day decided.

For the reasons therein stated, the relator in this case must also be discharged, and it is so ordered.

———

## AMERICAN RY. EXPRESS CO. v. PARISIAN HAT CO.    (No. 8636.)

(Court of Civil Appeals of Texas.    Dallas. March 25, 1922.    Rehearing Denied April 15, 1922.)

1. **Carriers ⚖➡105(1) — Allowance of loss of profits from sale of delayed goods without deducting expense held error.**

In a suit for delay in a shipment of millinery, it was error to allow as special damages the loss of profits from sale thereof at retail above the wholesale price without deducting the expense which would have been incurred.

2. **Carriers ⚖➡103—Special damages for delay must be pleaded and proved.**

Grounds for special damages on account of loss of profits from a carrier's negligent delay must be pleaded and proved.

3. **Carriers ⚖➡105(1) — Measure of damages for delay in shipment of seasonable merchandise stated.**

In a suit for damages for depreciation in value of seasonable goods the value of which was practically destroyed by delay in shipment during the period of federal control, plaintiff, having accepted the goods when delivered, could recover the amount of the depreciation in the reasonable market value thereof between the dates on which delivery should have been made and that on which delivery was actually made, not to exceed the maximum liability fixed in the contract pursuant to Federal Control Act, § 10.

4. **Carriers ⚖➡105(1) — What is meant by "market value" of goods delayed in transportation in determining damages stated.**

The term "market value," in determining the measure of damages for depreciation in the value of seasonable goods delayed in trans-

portation, must be considered as meaning the price at which such merchandise would sell in the open market in quantities as shipped at the point of destination; but, in the absence of a wholesale market at such place when the merchandise should have been delivered, the actual value thereof on such date at the nearest wholesale market may be considered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Value.]

**5. Appeal and error ⬤⟿1175(1)—Judgment erroneously awarding damages not reversed and rendered in absence of evidence as to market value.**

In the absence of testimony showing that there was no wholesale market at the point of destination of goods delayed in shipment, a judgment erroneously awarding damages will be reversed and remanded, instead of reformed and rendered.

Appeal from County Court, at Law, Dallas County; T. A. Work, Judge.

Action by the Parisian Hat Company against the American Railway Express Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Gaius G. Gannon and Smith, Robertson & Robertson, all of Dallas, for appellant.

Chas. T. McCormick and Etheridge McCormick & Bromberg, all of Dallas, for appellee.

VAUGHAN, J. Appellee, a joint-stock association, instituted this suit against appellant to recover $550 damages.

Appellee alleged that on or about the 23d day of March, A. D. 1920, it delivered to appellant at Dallas, Tex., for transportation and delivery to J. B. Senk, at Ranger, Tex., a shipment of merchandise consisting of 41 hats, 1 dozen elastic veils, 1 30-yard bolt veiling, and 1 25-yard bolt veiling. That a reasonable time for the delivery of the said shipment was, to wit, two days, and that the plaintiff had facilities for the disposition and sale of said property at Ranger, Tex. That defendant unreasonably delayed the transportation and delivery of said shipment until on or about the 23d day of April, at which time it notified plaintiff that the goods had arrived at Ranger. That on the said date the shipment had become practically unmarketable, in that the season for the same had passed, and that the merchandise contained in the shipment at that time, to wit, April 23, 1920, had no value except of their material. That such value would not exceed $75.

· That at the time of shipment appellant was notified that the shipment consisted of seasonable merchandise and that it was necessary for the same to be rushed in order that it might be profitably disposed of.

That there was no wholesale market value for said goods at Ranger, Tex., and that,

had appellant delivered the same with reasonable dispatch, appellee would and could have disposed of said goods for a sum which would have enabled it to realize a profit thereon of not less than $550.

That by occasion of the unreasonable delay of appellant in delivering said property as aforesaid, and of the decrease in the market value of the same during said period of unreasonable delay, and of the loss of profits aforesaid, appellee has been damaged in the sum of $550.

Appellant pleaded a general demurrer, a general denial, and specially answered that if the shipment referred to in appellee's petition was ever accepted for transportation and delivery by appellant, which is not admitted but expressly denied, then the shipment was tendered for delivery to and accepted by it under what is known as a limited liability contract; that, at the time appellee delivered said shipment to appellant, it declared and released the value of same to a sum not in excess of $500; and that appellant, in consideration of the value so declared or released, agreed to carry the said shipment at a lesser rate than would have been charged for same or similar service, and pleaded said contract for limited liability as a complete bar to appellee's right to recover in any event a greater sum than $500.

The trial was had before the court without a jury, and judgment was rendered in favor of appellee for $500.

Appellant admitted its liability, and the measure of damages is the only controversy presented by this appeal. On this issue the following facts are established by the evidence:

The shipment, containing the 41 hats, elastic veils, and two bolts of veiling was delivered to and accepted by appellant at its place of business for receiving merchandise for transportation on the 23d day of March, 1920, and, at the time, appellant's agent receiving said shipment was informed that same were seasonable goods and that Mr. J. B. Senk was going to Ranger to receive said shipment for appellee and would be there a week, and that unless said shipment was received within that time the goods would be worthless; that the hats were going to be sold at the hotel in Ranger, and that Mr. Senk would be in Ranger to sell same; that the wholesale value of said hats in Dallas at that time was $450; and that said hats had a retail value in Ranger, Tex., at the time same were shipped, of $629.

When said goods were received back in Dallas, they had no retail value either at Dallas or at Ranger. It was not shown whether or not there was a wholesale millinery store at Ranger, or that Dallas was such nearest wholesale market to Ranger; but it was shown that Dallas was the nearest principal wholesale millinery market for

Ranger during the period of time covered by said transaction.

On April 13, 1920, the season for spring hats had passed, and said hats had no retail value in Ranger on that date. Said hats reached Ranger, Tex., on April 13, 1920, and were worth at that time about $75. They were delivered to appellee in Dallas, Tex., by appellant about April 25, 1920; the season for the sale of same having passed before that date. That when the hats were returned to appellee at Dallas by appellant they had no wholesale or retail value either at Dallas or Ranger, but were worth about $75 intrinsically; that is, the raw material in the hats, if taken apart, would be worth about $75. The evidence did not establish what would have been the wholesale value of said hats at Ranger, Tex., at the time same should have been, with reasonable dispatch, delivered to appellee at said place, to wit, the 26th day of March, 1920.

[1] The trial court found that appellant had breached its contract of carriage and its obligation as a common carrier and was liable in damages to appellee for the difference between the retail market value of the goods at Ranger when they should have been delivered, to wit, $629, and their intrinsic value at the time they were actually received by appellee, to wit, $75, said difference being the sum of $554, and rendered judgment based on said finding for $500 in favor of appellee. In the state of the pleadings and proof this was error, in that appellee was indirectly allowed to recover, as damages, the profits which it might have received above the wholesale price of the hats without deducting the necessary expense which would have been incurred in retailing said merchandise. This necessarily placed the shipment in a different shape from that in which it was when delivered to appellant for transportation, to wit, the merchandise was delivered in bulk as one shipment and the recovery was allowed on the separate value, at retail, of each article of merchandise contained in said shipment.

[2] Under the facts, it may be conceded that, with reference to the merchandise contained in said shipment, appellee occupied the position of a retail merchant and, under proper allegation and proof, would have been entitled to recover as special damages the amount it would have earned over and above the wholesale price of said merchandise less the expense which necessarily would have been incurred in disposing of same at retail. In so far as it was sought to recover special damages on account of the loss of profits, appellee should have alleged the grounds giving rise to such rights and supported same by proper proof. This, appellee failed to do. Foster v. Int. & Gt. Northern Ry. Co. (Tex. Civ. App.) 175 S. W. 762; Midkiff et ux. v. Benson (Tex. Civ. App.) 225 S. W. 186.

In the case of Tucker v. Hamlin, 60 Tex. 171, plaintiff's cause of action was based on the wrongful seizure and conversion of a stock of liquors. The court held that the measure of damages was their value in bulk, not at retail, at the place of seizure on the day of conversion.

In the instant case appellee's cause of action is based on the depreciation in the market value of the shipment of merchandise made by it between the date on which the delivery should have been made and the date on which it actually was made, and was in no respect based on depreciation in the intrinsic value of such merchandise or conversion of same by appellant to its use and benefit.

[3] Appellee had the right to refuse to accept the shipment of merchandise upon its arrival at destination because the delay in transportation practically destroyed the value of the goods as seasonable merchandise; the loss amounting to what was equivalent to a total loss of same; the value of the shipment when delivered being intrinsically $75. However, having accepted from appellant said shipment, the reasonable market value of same at the time so received should be deducted from whatever amount of damage appellee in fact sustained by failure to deliver said shipment within a reasonable time as herein pointed out.

At the time said merchandise was received and transported, appellant's lines were under federal control. Under section 10 of the act of Congress governing the operation and use of systems of transportation while under federal control (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j), the Director General put in force, for the state of Texas, certain rates governing the class of transportation applied for and received by appellant. As a basic part of the rate charged, the rule in section 2 of the Contract of Carriage, to wit:

"In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less, and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein, the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value"

—was promulgated by the Director General limiting his liability in all events for shipments to an amount not in excess of the val-

ue declared by the shipper at the time of shipment. Under this limitation, appellee's shipment of merchandise was not (for the purpose of disposing of this litigation) at any time of a value in excess of $500, and if the proof should show that the wholesale shipment at the time same should have been delivered at Ranger, Tex., was only $450, then the reasonable market value of said merchandise when returned to and received by appellant should be deducted from said sum of $450. Western Transit Co. v. A. C. Leslie & Co., 242 U. S. 448, 37 Sup. Ct. 133, 61 L. Ed. 423; Wells Fargo & Co. Express v. Bollin (Tex. Civ. App.) 212 S. W. 283; Henderson v. Wells Fargo & Co. Express (Tex. Civ. App.) 217 S. W. 962.

Appellant having failed to deliver said shipment of merchandise to appellee within a reasonable time, and there being no depreciation in the intrinsic value of such merchandise, appellee's measure of damages was the depreciation in the market value of such hats between the date on which the delivery should have been made at Ranger, Tex., to appellee, to wit, March 26, 1920, and the date on which said delivery was actually made, to wit, April 13, 1920.

[4] The term "market value," as applied to the facts under which appellee seeks to recover, must be considered as meaning the price at which said merchandise would sell in the open market in quantities, as shipped, at Ranger, Tex. Texas & Pacific Ry. Co. v. Payne, 15 Tex. Civ. App. 58, 38 S. W. 366; A., T. & S. F. Ry. Co. v. Veale & Co., 39 Tex. Civ. App. 37, 87 S. W. 202; Chicago, R. I. & P. Ry. Co. v. Broe, 16 Okl. 25, 86 Pac. 441. However, in the absence of a wholesale market at said place at the time said merchandise should have been delivered to appellee, then the actual value of said merchandise on said date at the nearest wholesale market to Ranger, Tex., would be admissible to be considered with other evidence in determining the actual value of said merchandise at Ranger, Tex. Lambert-Murray Co. v. Southern Express Co., 146 N. C. 321, 59 S. E. 991; A., T. & S. F. Ry. Co. v. Veale & Co., supra; Southern Ry. Co. v. Morgan, 16 Ga. App. 617, 85 S. E. 933.

[5] If the statement of facts had disclosed that there was no wholesale market at Ranger for the merchandise involved in this suit at the time same should have been delivered and at the time same were delivered, and that Dallas was the nearest wholesale point to Ranger, Tex., the judgment of the court below would only have been reformed and rendered; but, for want of testimony establishing the above omitted facts, the judgment of the court below will be reversed, and said cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes